U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
JAN 2 2 2007
CLERK, U.S. DISTRICT COURT
By _____
           Deputy

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| SILICON SOLAR HOUSING SOLUTIONS, INC., ET AL., | § § § |
| Plaintiffs, | § § |
| VS. | §  NO. 4:06-CV-649-A |
| ADAM FARRELL, ET AL., | § § § |
| Defendants. | § |

MEMORANDUM OPINION
and
ORDER

Before the court for consideration and decision is the motion of defendants, Silicon Solar, Inc. ("SS"), and Adam Farrell ("Farrell"), to dismiss or, in the alternative, to transfer. After having considered the motion and supporting brief, response thereto of plaintiffs, Silicon Solar Housing Solutions, Inc. ("SSHS"), and Adam Blake ("Blake"), the reply of defendants, and applicable authorities, the court has concluded that the motion should be denied.

I.

*In Personam* Jurisdiction Issue

The main thrust of defendants' motion seeks dismissal of the claims asserted by plaintiffs against Farrell, a resident of New York, on the ground that this court lacks jurisdiction over his person.[1]  Mot. at 1, 4-10; Reply at 2-6.

---

[1] Plaintiffs' response to the motion seems to assume that the *in personam* jurisdiction feature of the motion applies to Silicon Solar, Inc., as well as Adam Farrell. However, the motion contains no
(continued...)

A.  Burden of Proof and Presumptions Related to Jurisdictional Issue.

When a nonresident defendant presents a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that in personam jurisdiction exists. Wilson v. Belin, 20 F.3d 644, 648 (5th Cir.); Stuart v. Spademan, 772 F.2d 1185, 1192 (5th Cir. 1985); D.J. Investments, Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc., 754 F.2d 542, 545-46 (5th Cir. 1985). The plaintiff need not, however, establish personal jurisdiction by a preponderance of the evidence; at this stage,[2] prima facie evidence of personal jurisdiction is sufficient. WNS, Inc. v. Farrow, 884 F.2d 200, 203 (5th Cir. 1989); Wyatt v. Kaplan, 686 F.2d 276, 280 (5th Cir. 1982). The court may resolve the jurisdictional issue by reviewing pleadings, affidavits, interrogatories, depositions, oral testimony, exhibits, any part of the record, and any combination thereof. Command-Aire Corp. v. Ontario Mechanical Sales & Serv., Inc., 963 F.2d 90, 95 (5th Cir. 1992). Allegations of the plaintiff's complaint are taken as true except to the extent that they are contradicted by defendant's affidavits. Wyatt, 686 F.2d at 282-83 n.13 (citing Black v. Acme Markets, Inc., 564 F.2d 681, 683 n.3 (5th Cir. 1977)). Any genuine, material conflicts between the facts

---

[1](...continued) contention that this court does not have in personam jurisdiction over Silicon Solar, Inc.

[2]Eventually, plaintiff must prove by a preponderance of the evidence that jurisdiction exists. See DeMelo v. Toche Marine, Inc., 711 F.2d 1260, 1271 n.12 (5th Cir. 1983).

2

established by the parties' affidavits and other evidence are resolved in favor of the plaintiff for the purposes of determining whether a prima facie case exists. Pignone v. Storman Asia M/V, 310 F.3d 374, 378 (5th Cir. 2002); Guidry v. U.S. Tobacco Co., Inc., 188 F.3d 619, 626 (5th Cir. 1999).

With the foregoing principles in mind, the court considers the allegations of the complaint and the items of an evidentiary nature the parties have submitted to the court on the jurisdictional issue.

B. Allegations of the Complaint and the Evidentiary Record.

    1. Allegations of the Complaint Pertinent to the *In Personam* Jurisdiction Issue.

Plaintiffs are seeking recovery from defendants based on alleged federal trademark infringement and unfair competition arising under the Lanham Act, 15 U.S.C. § 1051, et seq., and state law claims of unfair competition, trademark infringement, conversion, breach of contract, promissory estoppel, tortious interference with an existing contract, tortious interference with prospective relations, breach of fiduciary duty, defamation, and business disparagement. Compl. at 2-3, ¶ 5. According to the complaint, the dispute, between two college students, involves two solar devices Blake conceived and both students developed, were causing to be manufactured, and were distributing through SSHS, a Texas corporation both of them formed and owned.

Special contacts Farrell had with Texas alleged in the complaint are that[3] (1) Farrell participated in the formation with Blake, a resident of Texas, of SSHS as a Texas corporation, and is an officer and 50% shareholder of SSHS, (2) SSHS maintained its operating bank account at a Fort Worth, Texas, branch of Bank of America, (3) SSHS had office space in Fort Worth, Texas, (4) Farrell improperly withdrew money from SSHS's operating account at Bank of America and transferred it to his personal account and into SS's bank account, (5) Farrell and SS decimated SSHS's business by informing SSHS's potential and existing customers that SSHS would no longer be selling the solar devices, and (6) Farrell, in violation of his fiduciary duties to SSHS, (a) solicited SSHS's potential and existing solar product customers in order to sell the solar products through SS, (b) sold, without authorization, SSHS's solar products through SS, and (c) converted SSHS's solar products, which were being stored at SS's warehouse.  Plaintiffs allege that the conduct described above adversely affected plaintiffs in the State of Texas, including the crippling of SSHS's business, and that Farrell knew when he engaged in that conduct that the conduct would cause harm to plaintiffs in Texas.

    2.    <u>Farrell's Declaration</u>.

---

[3] The court is not including in the enumeration of Texas contacts the purely conclusory allegations in the complaint.

The motion is supported by a declaration of Farrell, who asserts, in support of his contention that this court does not have in personam jurisdiction as to him, the following:

Farrell is a resident of New York, and is a student at a university located in New York. He has never conducted business in Texas, has never been a resident of Texas, has never had a savings or checking account in Texas, does not have any systematic contacts with Texas, and has never visited Texas. He is a principal of SS. SS is a New York corporation which has its principal place of business in New York. It has not had contact with the State of Texas.

In November 2005, while Blake was in New York, Blake entered into an agreement with SS, which is the sole agreement between Blake and SS. All of the acts or omissions of Farrell for which plaintiffs seek to hold Farrell liable occurred, if at all, in New York. Blake established SSHS by himself in Texas, and unilaterally made Farrell some sort of director, officer, or shareholder. Farrell never agreed to any of that, nor to establishing any entity in Texas. It would be extremely burdensome to him to defend a lawsuit in Texas.

3.   Blake's Declaration.

Plaintiffs supplied with their reply a declaration of Blake in which he said, on the subject of contacts with Texas:

Blake, a student at Texas Christian University in Tarrant County, Texas, is a resident of Texas. He is president and secretary of SSHS, which is a Texas corporation located in

5

Tarrant County, Texas. He met Farrell during an annual college entrepreneurship conference in Orlando, Florida, in October 2005, at which time they discussed uses that might be made of solar energy. When Blake told Farrell of an idea he had relative to use of solar power for illuminating real estate signs, Farrell suggested they meet in New York to discuss the idea in further detail. They did meet in New York for that purpose, where they designed a prototype of Blake's idea. While in New York, Blake, at Farrell's request and as a condition to being permitted by Farrell to view SS's warehouse and operations, signed a confidentiality agreement.

After meeting with Farrell in New York, Blake returned to Texas, where he did further development work on solar devices that were to be developed and sold by Blake and Farrell. The two of them agreed to form SSHS for the purpose of further developing and ultimately selling two solar devices Blake had conceived. They agreed that Blake would serve as president and secretary of SSHS and that Farrell would serve as vice president and treasurer. Each owned 50% of the outstanding shares of SSHS. They agreed that the designs of the solar energy devices, along with the actual products themselves, would be exclusively owned and held by SSHS in Fort Worth, Texas; and, they orally agreed that SSHS would have the exclusive right to sell the solar devices.

In November 2005 an operating account for SSHS was established with Bank of America in Fort Worth, Texas. Blake and

Farrell signed signatory cards for the account.  Farrell sent a copy of his driver's license to Bank of America in Fort Worth to perfect his signatory rights on the account.  Blake deposited $10,000 to the account.

Blake and Farrell exchanged hundreds of e-mails and telephone calls in preparation for releasing the solar products on the open market.  Farrell caused (1) language to be included on SSHS's website acknowledging that the two products were created by SSHS, and stating that SSHS had two U.S. offices, one in New York and the other in Texas, and (2) SSHS's contact information on the website to show its address to be 1120 S. Freeway Ste. 129, Fort Worth, Texas 76109.  Farrell designated Fort Worth, Texas, as the mailing address for payment in connection with a merchant account he established with Bank of America for SSHS.

After noticing that Farrell was distancing himself from the operations of SSHS, Blake investigated the reasons for Farrell's behavior.  His investigation uncovered that Farrell was selling the solar energy products in question through SS, contrary to Farrell's agreement with Blake that SSHS owned, and had the exclusive rights to, the products.  After Blake confronted Farrell, by a telephone call from Texas to Farrell in New York, with the information he had obtained, Farrell withdrew from SSHS's operating account at Bank of America the majority of the funds in the account, and transferred those funds into Farrell's personal account and into SS's bank account.

C. <u>Farrell's Person is Subject to the Jurisdiction of This Court</u>.

Personal jurisdiction over a nonresident may be exercised if (1) the nonresident defendant is amenable to service of process under the law of a forum state, and (2) the exercise of jurisdiction under state law comports with the due process clause of the Fifth Amendment.[4]  <u>Max Daetwyler Corp. v. R. Meyer</u>, 762 F.2d 290, 293 (3d Cir. 1985); <u>Wilson</u>, 20 F.3d at 646-47; <u>Thompson v. Chrysler Motors Corp.</u>, 755 F.2d 1162, 1166 (5th Cir. 1985) (quoting <u>Smith v. DeWalt Prods. Corp.</u>, 743 F.2d 277, 278 (5th Cir. 1984)).  Since the Texas long-arm statute has been interpreted as extending to the limits of due process,[5] the only inquiry is whether the exercise of jurisdiction over the nonresident defendant would be constitutionally permissible. <u>Bullion</u>, 895 F.2d at 216; <u>Stuart</u>, 772 F.2d at 1189.

For due process to be satisfied, (1) the nonresident defendant must have "minimum contacts" with the forum state resulting from an affirmative act on the defendant's part, and

---

[4] The same minimum contacts test applies under both the Fifth and Fourteenth Amendments where there is no federal statute authorizing nationwide service of process.  <u>Point Landing, Inc. v. Omni Capital Int'l, Ltd.</u>, 795 F.2d 415, 427 (5th Cir. 1986), <u>aff'd</u>, 484 U.S. 97 (1987) ("absent specific congressional authority, a federal district court has no personal jurisdiction over a defendant who cannot be reached by the long-arm statute of the state in which the district court sits"); <u>Max Daetwyler Corp. v. R. Meyer</u>, 762 F.2d 290, 293 (3d Cir. 1985); <u>Whistler Corp. v. Solar Elec., Inc.</u>, 684 F. Supp. 1126, 1128-29 (D. Mass. 1988).  Accordingly, the court cites to Fourteenth Amendment cases herein as appropriate.

[5] <u>See, e.g.</u>, <u>Guardian Royal Exchange Assurance Ltd. v. English China Clays, P.L.C.</u>, 815 S.W.2d 223, 226 (Tex. 1991); <u>Schlobohm v. Schapiro</u>, 784 S.W.2d 355, 357 (Tex. 1990); <u>Kawasaki Steel Corp. v. Middleton</u>, 699 S.W.2d 199, 200 (Tex. 1985).

8

(2) the contacts must be such that the exercise of jurisdiction over the person of the defendant does not offend "traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)).

The minimum contacts prong of the due process requirement can be satisfied by a finding of either "specific" or "general" jurisdiction over the nonresident defendant. Bullion, 895 F.2d at 216. Plaintiffs do not contend that the court has general jurisdiction over the person of Farrell, but do contend that the court has specific jurisdiction over his person. For specific jurisdiction to exist, the foreign defendant must purposefully do some act or consummate some transaction in the forum state and the cause of action must arise from or be connected with such act or transaction. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985). "A plaintiff bringing multiple claims that arise out of different forum contacts of the defendant must establish specific jurisdiction for each claim" because "[i]f a defendant does not have enough contacts to justify the exercise of general jurisdiction, the Due Process Clause prohibits the exercise of jurisdiction over any claim that does not arise out of or result from the defendant's forum contacts." Seiferth v. Helicopteros Atuneros, Inc., --- F.3d ---, 2006 WL 3564657 (5th Cir. Dec. 11, 2006).

The second prong of the due process analysis is whether exercise of jurisdiction over the nonresident defendant would

9

comport with traditional notions of fair play and substantial justice. International Shoe, 326 U.S. at 316. In determining whether the exercise of jurisdiction would be reasonable such that it does not offend traditional notions of fair play and substantial justice, the Supreme Court has instructed that courts look to the following factors: (1) the burden on the defendant, (2) the interests of the forum state, (3) the plaintiff's interest in obtaining relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) shared interest of the several states in furthering fundamental substantive social policies. Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102, 113 (1987) (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980)).

When, as the Fifth Circuit has instructed the court to do, the court accepts as true any unchallenged allegations of fact contained in the complaint and any facts presented in an evidentiary way by plaintiffs, even though plaintiffs' evidence might be contradicted by Farrell's, the court concludes from such allegations and evidence that plaintiffs have made a prima facie case of personal jurisdiction over Farrell.

Farrell has had "minimum contacts" with Texas resulting from his affirmative acts. He engaged in business transactions with a Texas resident, and he participated with a Texas resident in the formation of a Texas corporation to use as a vehicle for the conduct of business between Farrell and Blake, a Texas resident,

in the State of Texas. He had ongoing communications with his business associate in Texas concerning the affairs of the Texas corporation. He served as an officer and 50% owner of the Texas corporation. He took actions that inevitably would cause, and did cause, damage to plaintiffs in Texas. His contacts with Texas have been such that the exercise of jurisdiction over his person would not offend traditional notions of fair play and substantial justice. All of the causes of action asserted by plaintiffs against Farrell arise out of and relate to acts or transactions that Farrell purposefully engaged in which affected a Texas resident and a Texas corporation.

The court has concluded that exercise of jurisdiction over Farrell's person would comport with traditional notions of fair play and substantial justice. While Farrell will suffer more of a financial burden by participating in litigation in Texas than he would if the action were pending in New York, such a burden would certainly be no greater on Farrell than would be the burden on Blake if he were to be required to litigate his claims against Farrell in a New York court. The stakes are high enough[6] that the expense of participating in litigation in Texas cannot be viewed to be disproportionate to the importance of the litigation. Texas has an interest in this litigation in the sense that it involves alleged breaches of fiduciary obligations

---

[6] According to Blake's declaration, at one point SSHS was offered $1,000,000 for the exclusive rights to one of the solar products Blake and Farrell developed and were selling through SSHS until Farrell appropriated the business. Resp., App. at 5, ¶ 11.

11

owed to a Texas corporation by an officer of the corporation, alleged damage to a corporation incorporated and situated in Texas, and alleged damage to a Texas resident arising from his transactions, while situated in the State of Texas, with Farrell. Needless to say, plaintiffs have a vital interest in obtaining the relief they seek in this action. There is no reason why the controversy cannot as efficiently be resolved by a Texas court as by a court in New York; and, Texas has at least as much interest as any other state in furthering the fundamental substantive social policy of causing justice to be rendered in a case where wrongs such as alleged by plaintiffs have occurred.

For all of the reasons given above, the court is denying defendants' motion to dismiss for want of personal jurisdiction over Farrell.

II.

### Defendants' Request for Dismissal Based on Allegedly Improper Venue

The court assumes for the sake of discussion that plaintiffs bear the burden to prove that venue is proper. Plaintiffs maintain that they brought the action in this district pursuant to the authority of 28 U.S.C. § 1391 because this is "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . ." 28 U.S.C. § 1391(b)(2). The court agrees with plaintiffs. Farrell and Blake established a Texas corporation in this district to develop, own, and sell solar products. Farrell improperly, and in violation of his fiduciary duties to SSHS, took funds from

SSHS's operating account held with Bank of America in this district. Defendants began selling, and continue to sell through SS's website, the SunPal and SolMaxx to customers in violation of the Texas corporation's exclusive rights to those solar projects and in violation of Farrell's fiduciary duties to a Texas corporation. Defendants engaged in activities that caused substantial harm to plaintiffs in this district. Those activities constitute a substantial part of the events or omissions giving rise to the claims asserted by plaintiffs against defendants in this action. Therefore, the motion to dismiss based on allegedly improper venue is being denied.

                                III.

                The Alternative Motion to Transfer

Defendants' alternative motion to transfer assumes that venue in this district is improper. For the reasons stated above, the court has concluded that venue is not improper. Therefore, the alternative motion should be denied.

IV.

Order

For the reasons given above,

The court ORDERS that defendants' motion to dismiss or, in the alternative, to transfer be, and is hereby, denied.

SIGNED January 22, 2007.

/s/ John McBryde
JOHN McBRYDE
United States District Judge